FAIRBANKS, MORSE & Co. *et al. v.* GAMBILL.

*(Nashville.* December Term, 1919.)

1.   **PLEADING.** Plea in abatement waived by disregard of it by all
parties.

Where no replication was filed to plea in abatement and no action
thereon invoked after it was filed, but it was entirely ignored
by the parties and the court, and the case proceeded with on
the merits, the plea in abatement was waived.   (*Post, pp.* 633-641.)

2.   **APPEAL AND ERROR.** Evidence of party recovering verdict must
be accepted.

The Supreme Court must, after verdict for plaintiff, accept as the
the established facts in the case the version of the plaintiff as to
controverted question of fact.   (*Post, pp.* 641, 642.)

3.   **NEGLIGENCE.** Proximate cause for jury, unless undisputed facts
are susceptible of but one inference.

Where the facts are controverted and of such a character that
different minds might reasonably draw different conclusions there-
from, the question of proximate cause is for the jury, but when
the facts are undisputed and are susceptible of but one inference,
the question is one of law for the court, and the same rule
applies where an independent intervening cause is relied on by
defendant.   (*Post, pp.* 642, 643.)

Cases cited and approved: J. S. Moody and J. M. Horn v. Gulf
Refining Co., 218 S. W., 817;  Teis v. Smuggler Min. Co., 158 Fed.,
260;  Pilmer v. Boise Traction Co., 14 Idaho, 327;  Stone v. Bos-
ton, etc., R. Co., 171 Mass., 536;  Huber v. La Crosse City R.
Co., 92 Wis., 636;  Snyder v. Colorado Springs, etc., R. Co., 36 Colo.,
288;  Clark v. Wallace, 51 Colo., 437;  Illinois Cent. R. Co., v. Siler,
229 Ill., 390;  Coy v. Indianapolis Gas Co., 146 Ind., 655;  Mo.
Pac. R. Co. v. Columbia, 65 Kan., 390;  Stone v. Boston, etc., R.

Co., 171 Mass., 536; Smith v. Public Service Corp., 78 N. J. Law, 478.

4. **NEGLIGENCE. ''Proximate cause'' defined.**

"Proximate cause" is one of which the injury is a natural and probable consequence, such a consequence as, under the circumstances might and ought to have been foreseen by the wrongdoer. (*Post, pp.* 643, 644.)

Cases cited and approved: Hoag v. Lake Shore & M. S. R. Co., 85 Pa., 293; Railroad v. Kelly, 91 Tenn., 699; Anderson v. Miller, 96 Tenn., 35; Chattanooga Light, etc., Co. v. Hodges, 109 Tenn., 331.

Case cited and distinguished: Deming v. Merchants' Cotton Press, etc., Co., 90 Tenn., 306.

5. **EXPLOSIVES. Proximate cause of injury held for jury.**

Where defendant left with plaintiff a can containing gasoline which he stated did not contain any dangerous or explosive substance, and plaintiff, mistaking the can for an oil can of his own, poured it on kindling to light a fire, from which an explosion resulted, the question whether defendant's wrongful act was a proximate cause of the injury was properly submitted to the jury. (*Post,* · *pp.* 644-646.)

Cases Cited and distinguished: Waters-Pierce Oil Co. v. Deselmes, 18 Okla., 107; Ellis v. Republic Oil Co., 133 Iowa, 11; Peterson v. Standard Oil Co., 55 Or., 511.

6. **EXPLOSIVES. Not contributory negligence in law to use kerosene to kindle fire.**

It was not contributory negligence as a matter of law for plaintiff to use kerosene to kindle a fire, or to pick up a can of gasoline, left by defendant with the statement that it contained nothing explosive which had been placed where plaintiff ordinarily kept his kerosene can of similar appearance. (*Post, pp.* 646-648.)

7. **NEGLIGENCE. Contributory negligence no defense to wanton misconduct.**

Statement by defendant that a can containing gasoline contained no dangerous or explosive substance constituted willfulness, wan-

Fairbanks, Morse & Co. v. Gambill.

toness, and recklessness on his part, so that he cannot rely on plaintiff's contributory negligence as a defense to liability for injuries caused thereby. (*Post, pp.* 646-648.)

Cases cited and approved: Railroad v. Roe, 118 Tenn., 601; Birmingham R. etc., Co. v. Jung, 161 Ala., 461.

8. **DAMAGES.** $5,000 for burns on arm and face held excessive by $2,500.

A verdict awarding $5,000 damages for second degree burns on the arms and first degree burns on the face, which caused considerable pain, but which had entirely healed without permanent injury, leaving only small scars, *held* excessive, and reduced to $2,500. (*Post, pp.* 648, 649.)

### FROM DAVIDSON

Appeal from the Circuit Court of Davidson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—Hon. A. G. Rutherford, Judge.

E. T. SEAY, JNO. B. KEEBLE and F. M. BASS, for plaintiff in error.

W. H. WASHINGTON, B. D. SHRIVER and J. E. TRAVIS, for defendant in error.

MR. JUSTICE HALL delivered the opinion of the Court.

An action of damages instituted in the circuit court of Davidson county by the plaintiff, Charles H. Gambill, against the defendants, Fairbanks, Morse & Co. and D. K. Lee, to recover for personal injuries alleged to have been sustained by the plaintiff as a result of the negligence of the defendants. The trial of the case in

the circuit court resulted in verdict and judgment for the plaintiff for $5,000.

Defendants' motion for a new trial having been overruled, an appeal in the nature of a writ of error was taken by the defendants to the court of civil appeals. That court reversed the judgment of the circuit court, and dismissed the suit upon the ground that there was no evidence to support the verdict and judgment, and that the defendants' motion for a directed verdict, made at the conclusion of all the evidence, should have been sustained by the trial judge. The court of civil appeals also sustained the defendants' assignment of error going to the excessiveness of the verdict, being of the opinion that the verdict of $5.000 was excessive in view of the nature of the plaintiff's injuries. The plaintiff filed his petition in this court for a writ of *certiorari,* which was granted, and the case is now before this court for review.

The plaintiff's declaration contains one count, and avers that the plaintiff was working as a laborer for the Tennessee Central Railroad Company at the time of sustaining his injuries, and used in his work a certain office in the railroad yards of said company in Nashville, Tenn.; that the defendant D. K. Lee was, at the time of the accident demonstrating a motor hand car belonging to the defendant Fairbanks, Morse & Co., which hand car was propelled by gasoline; that said Lee, being the agent of the defendant Fairbanks, Morse & Co., and while acting within the general scope of his authority as such agent, brought into the office of the plaintiff a can, such as is commonly used to contain coal oil, without

any mark upon it indicating its explosive qualities and asked permission of the plaintiff to store the can in his (plaintiff's) office, assuring plaintiff at the time that it did not contain anything dangerous or explosive, and "negligently impressed plaintiff with the belief that it was coal oil, entirely harmless, and only had the properties of coal oil, and thereby threw plaintiff off his guard, whereas in truth and in fact it was pure gasoline, a highly volatile and dangerous explosive;" that on the day of the accident, to wit, 28th day of December, 1916, plaintiff, mistaking said can for his own can, which contained coal oil, and which was similar to the can left in the office by the defendant Lee, used it to pour some coal oil on the kindling to start the fire in the office stove, a use entirely harmless and without danger for coal oil or any other oil of similar properties, and while doing so plaintiff was in the exercise of ordinary care, but that by reason of the negligence of the defendants, and as a proximate result of being deceived and misled as to the identity, nature, and dangerous and explosive qualities of the contents of said can, it took fire and exploded with terrific force and violence, covering plaintiff with sheets of flames, whereby his body, head, face, nose, hands, arms, and legs were severely burned.

Both defendants filed pleas of not guilty. The defendant Fairbanks, Morse & Co., however, first filed a plea in abatement to the jurisdiction of the court upon the ground that it was not in court by proper service of process by reason of the fact that the defendant D. K. Lee, upon whom process was served, was not at the

time of the service an officer of the company, but was merely an employee or traveling salesman or solicitor for said defendant company, and was not therefore, such agent or representative as that service of process issued against said defendant could be properly and lawfully executed upon said Lee.

There was no replication filed, or issue joined on said plea in abatement, and no action of the court.was in any manner invoked by the defendants upon it after it was filed. So far as the record shows, it was entirely ignored by the parties to the suit and the court, and the case was proceeded with on the merits. This amounted to a waiver of the plea in abatement.

Upon the trial in the circuit court plaintiff testified that during the year 1916 he was in the service of the Tennessee Central Railroad Company as a car inspector in its yards at Nashville; that he had an office in the east end of what was called the old freighthouse; that the defendant D. K. Lee was engaged in the business of demonstrating motor hand cars for the defendant Fairbanks, Morse & Co., that is, hand cars operated by gasoline power; that in the summer of 1916, the defendant Lee was down in the yards of the Tennessee Central Railroad Company, demonstrating a hand car which he had for sale, and which he desired to sell to the Tennessee Central Railroad Company, and that about noon Lee walked into his (plaintiff's) office with a can of oil of some kind in his hand, and asked him if he would allow him (Lee) to leave it there. Plaintiff says that he asked Lee if there was any gasoline about it, and that Lee replied, "No;" that he asked Lee if

there were anything dangerous or explosive about it, and
that Lee replied, "No;" that thereupon he (Gambill)
told Lee that the company (Tennessee Central Railroad
Company) had an oil house up there near the shop, and
he could go and leave the oil there, and that Lee replied
that it was so far up there he did not care to go. The
plaintiff says he then stated to Lee that the track walker
had an old shanty at the spur track, and that possibly
the track walker would let him leave his oil there; that
Lee replied, "No, I will just leave it here," and set it
down in one corner of the office. Plaintiff further testi-
fied that as Lee started out of the office he (Lee) said
if anything happened he would be responsible for it.
Plaintiff says that he got the impression from the state-
ments made by Lee that the contents of the can were
entirely harmless and not explosive. He says the can
was an ordinary coal oil can, and was just like the can
he (plaintiff) kept in the office, which contained coal
oil. The plaintiff testified that he kept coal oil in
the office for the purpose of filling his lanterns, and
was also in the habit of kindling fires in the office stove
with coal oil; that he would usually put kindling in the
office stove and pour a little coal oil on it and stick a
lighted match to it, and in this way start the fire; that
he had been doing this for a long time, and did not
regard it as dangerous to do so. Plaintiff further testi-
fied that the can remained in his office until the 28th
day of December, 1916, when he went into the office
early in the morning between 6 and 6:30 o'clock and
put some coal and kindling in the stove, and picked up a
can which he thought was his own can containing coal oil

which he had been in the habit of using to start the fire, but by mistake got hold of the can which had been left in the office by the defendant Lee, which contained gasoline, and poured it on the kindling in the stove, and it happened that there were some live coals in the stove, which fact was not known to him, as there had been no fire in the stove since the day before the accident, and the can immediately exploded with terrific force, throwing the burning gasoline and fire on his body, seriously burning him about the hands, arms, and face. He testified that other railroad employees had access to his office, and some one had moved his can from the place where he usually kept it, and placed the can containing the gasoline in its stead the night before the explosion without his knowledge.

Plaintiff's testimony as to the representations made to him by Lee as to the contents of the can at the time he left it in the plaintiff's office is substantially corroborated by the testimony of the witness Monroe Bostick, who testified on behalf of the plaintiff. Bostick says that he was in the office of the plaintiff when Lee brought the can in and asked the plaintiff if he could leave it in the office. Bostick says the plaintiff asked Lee what was in the can, stating to Lee that the company did not allow him to keep any explosives in the office. Bostick says that Lee told plaintiff that the can did not contain any explosive; that it wouldn't explode.

The defendant Lee testified on behalf of the defendants, and admitted leaving the can of gasoline in the plaintiff's office; testified that the plaintiff was familiar with the contents of the can, and denied that he told the

plaintiff that the can did not contain anything explosive. He testified that the plaintic did not ask him as to the contents of the can at the time he left it in his (plaintiff's) office, and that he made no representation whatever to plaintiff as to the contents of said can.

The jury, however, settled this controverted question of fact in favor of the contention of the plaintiff, and this court must therefore accept the version of the plaintiff as to the circumstances under which the can of gasoline was left in his office by Lee, and the statements made by Lee as to its contents, as the established facts of the case, and must determine the question of the defendants' liability upon them.

It is insisted by the plaintiff that the court of civil appeals erred in sustaining defendants' assignment of error to the effect that the trial court erred in not directing a verdict in favor of defendants upon their motion made at the conclusion of all the evidence, and in dismissing plaintiff's suit.

Upon the other hand, it is insisted by the defendants that the action of the court of civil appeals was correct, because the proof failed to show that the negligence of Lee, if any, in not advising plaintiff of the contents of the can, which was left in his office, was the direct and proximate cause of the plaintiff's injuries, but that his injuries were the direct result of the act of the plaintiff in attempting to kindle a fire in the office stove with the contents of said can.

It is further insisted by the defendants that, even if the defendant Lee were negligent in not advising the plaintiff of the contents of said can, and that such

negligence directly and proximately contributed to the
plaintiff's injuries, still the plaintiff was also guilty
of negligence which directly and proximately contrib-
uted to his injuries in attempting to use the contents of
said can in building a fire in the office stove in which
there were live coals, which contributory negligence,
it must be held, barred his right to recover.

The general rule is that what is the proximate cause
of an injury is a question for the jury; the court
instructing them as to what the law requires to con-
stitute it, and the jury applying the law to the facts.
But whether the question is one to be determined by
the jury depends on the facts of each case. Thus where
the facts of the particular case are controverted, and
are of such a character that different minds might rea-
sonably draw different conclusions therefrom, a ques-
tion of facts is presented properly determinable by the
jury. See opinion in the cases of *J. S. Moody and
J. M. Horn* v. *Gulf Refining Co.*, 218 S. W., 817,
decided at the present term of the court; R. C. L.,
vol. 22, section 31; *Teis* v. *Smuggler Min. Co.*, 158
Fed., 260, 85 C. C. A., 478, 15 L. R. A. (N. S.), 893;
*Pilmer* v. *Boise Traction Co.*, 14 Idaho, 327, 94 Pac.,
432, 15 L. R. A. (N. S.), 254, 125 Am. St. Rep., 161;
*Stone* v. *Boston, etc., R. Co.*, 171 Miss., 536, 51 N.
E., 1, 41 L. R. A., 794; *Huber* v. *La Crosse City R. Co.*,
92 Wis., 636, 66 N. W., 708, 31 L. R. A., 583, 53 Am.
St. Rep., 940.

But when the facts are undisputed and are suscepti-
ble of but one inference, the question is one of law for
the court. *Teis* v. *Smuggler Min. Co.*, 158 Fed., 260,

85 C. C. A., 478, 15 L. R. A. (N. S.), 893; *Snyder* v. *Colorado Springs, etc., R. Co.,* 36 Colo., 288, 85 Pac., 686 8 L. R. A. (N S ), 781, 118 Am St. Rep., 110; *Clark* v. *Wallace,* 51 Colo., 437, 118 Pac., 973, Ann. Cas., 1915B, 349 and note; *Illinois Central R. Co.* v. *Siler,* 229 Ill., 390, 82 N. E., 392, 15 L. R. A. (N. S.), 819, 11 Ann. Cas., 368; *Coy* v. *Indianapilis Gas Co.,* 146 Ind., 655, 46 N. E., 17, 36 L. R. A., 535; *Missouri Pac. R. Co.* v. *Columbia,* 65 Kan., 390, 69 Pac., 338, 58 L. R. A., 399; *Stone* v. *Boston, etc., R. Co.,* 171 Mass., 536, 51 N. E., 1, 41 L. R. A., 794; *Smith* v. *Public Service Corp.,* 78 N. J. Law, 478, 75 Atl., 937, 20 Ann. Cas., 151.

To the same effect is the rule where an independent intervening efficient cause is relied on by the defendant. R. C. L., vol. 22 section 32; *Clark* v. *Wallace,* 51 Colo., 437, 118 Pac., 937, Ann. Cas., 1913B, 355 and note.

In determining what is proximate cause, the true rule is that the injury must be the natural and probable consequence of the act—such a consequence as, under the surrounding circumstances of the case, might and ought to have been foreseen by the wrongdoer as likely to flow from his act. *Hoag* v. *Lake Shore & M. S. R. Co.,* 85 Pa., 293, 27 Am. Rep., 653.

In *Deming* v. *Merchants' Cotton Press, etc., Co.,* 90 Tenn., 306, 17 S. W., 89, 13 L. R. A., 518, this court said:

"The proximate cause of an injury may, in general, be stated to be that act or omission which immediately causes or fails to prevent the injury; an act or omission occurring or concurring with another, which had it not

happened, the injury would not have been inflicted.''

This definition was approved in the later cases of *Railroad* v. *Kelly*, 91 Tenn., 699, 20 S. W., 312, 17 L. R. A., 691, 30 Am. St. Rep., 902, *Anderson* v. *Miller*, 96 Tenn., 35, 33 S. W., 615, 31 L. R. A., 604, 54 Am. St. Rep., 812, and *Chattanooga Light, etc., Co.* v. *Hodges*, 109 Tenn., 331, 70 S. W., 616, 60 L. R. A., 459, 97 Am. St. Rep., 844.

The plaintiff's declaration avers a state of facts which show that the defendant Lee wilfully and deliberately misrepresented the contents of said can to the plaintiff at the time he left it in his office in that he told the plaintiff that it did not contain gasoline or any other explosive substance. The averments of the declaration are amply sustained by the proof offered on behalf of the plaintiff. While the plaintiff does not expressly so testify, it may be inferred from his testimony that if he had been advised that the can contained an explosive substance he would not have permitted the defendant Lee to leave it in his office. If the can had not been left in plaintiff's office by the defendant Lee it is certain that the accident, which resulted in injury to the plaintiff, would not have happened.

We are of the opinion that the question of whether or not the defendant Lee's act in leaving the can in the plaintiff's office, and stating to him that it did not contain anything dangerous or explosive, was the direct and proximate cause of the plaintiff's injuries was one for determination by the jury. We are of the opinion that the question of whether the defendant Lee should have reasonably anticipated that plaintiff might, through

Fairbanks, Morse & Co. v. Gambill.

mistake, undertake to use the contents of the can for some of the purposes for which kerosene or coal oil is ordinary used, and in doing so would sustain injury, was one for determination by the jury. We do not think it can be said, as a matter of law, that the defendant Lee could not reasonably have anticipated that such a result would happen from the leaving of the can in the plaintiff's office under the circumstances which the proof shows it was left. It is a matter of common knowledge that coal oil is generally used for illuminating purposes, both in lamps and lanterns, and is also commonly used for kindling fires, and that it is generally kept on every premise for one or both of these purposes, and in cans similar to the one left by the defendant Lee in the plaintiff's office containing gasoline.

In *Waters-Pierce Oil Co.* v. *DeSelmes,* 18 Okla., 107, 89 Pac., 21, the defendant sold to Powers & De Selmes two barrels containing a mixtre of coal oil and gasoline, as ordinary coal oil. Two barrels were emptied into a galvanized iron tank in their store. The plaintiff was a clerk of Powers & De Selmes, and carried two gallons of this oil to his home, and this oil became ignited while the plaintiff's wife was undertaking to kindle a fire in the stove. The evidence leading to that conclusion was circumstantial. The defendants sought to invoke the doctrine of contributory negligence upon the part of the plaintiff's wife in using the oil to kindle the fire in the stove. The court, in its opinion, said:

"With reference to the charge of contributory negligence contained in the answer of plaintiff in error, no

proof having been introduced other than is shown by the general evidence in the case, which raises a presumption that the wife of defendant in error was at the time of the accident engaged in the act of kindling a fire with the use of the oil, we cannot hold that such defense is sustained. The use of coal oil for such purpose is too common and too well known for the court to say that it was negligence on her part to so use it, beside the instinct of self-preservation justifies the presumption that in so using it she did so with due care.''

In *Ellis* v. *Republic Oil Co.*, 133 Iowa, 11, 110 N. W., 20, the court said:

''The use of kerosene in kindling fires is too common and too well known for us to say that a person using reasonable care may not employ that agency without being chargeable with negligence.''

In *Peterson* v. *Standard Oil Co.*, 55 Or., 511, 106 Pac., 337, Ann. Cas., 1912A, 625, the court said:

''The common knowledge of the community is that its (kerosene) primary use is for the purpose of illumination; that secondarily it is used in oil stoves for heating purposes. It is also used for the purpose of removing grease and oils from wood or iron, and for kindling fires, as well as for many other purposes. Its use for many of these purposes is not uncommon, and we think that the employment of it for the purpose of kindling fires is not in itself negligence.''

The fact that the plaintiff mistook the can containing the gasoline for his can, which contained coal oil, the two can being identical, is not at all unreasonable or

unnatural; and we are of the opinion that the defendants cannot be heard to say, after leaving the can containing a highly volatile fluid in the plaintiff's office, assuring him that it contained nothing dangerous or explosive, that the plaintiff was guilty of contributory negligence in mistaking the can containing gasoline for his own can, which contained coal oil, and in attempting to kindle a fire in the office stove with its contents. The representation made by the defendants to the plaintiff as to the contents of the can were false and fraudulent, and constituted such willfulness, wantonness, and recklessness on his part as to show an utter disregard for the plaintiff's rights  This being true, the doctrine of contributory negligence cannot be invoked by the defendants to defeat his right to recover.

In view of the facts the defendants are responsible for the injury inflicted upon the plaintiff, even if it could be said that he were guilty of negligence in undertaking to kindle a fire in the office stove with what he thought to be coal oil. *Railroad* v. *Roe,* 118 Tenn., 601, 102 S. W., 343; *Birmingham R., etc., Co.* v. *Jung,* 161 Ala., 461, 49 So. 434, 18 Ann. Cas., 557. In both of these cases the rule is announced that contributory negligence is not available as a defense where the injuries complained of were caused by the wanton or wilfull misconduct of the defendant.

We are of the opinion, therefore, that the court of civil appeals committed error in sustaining the defendants' motion for a directed verdict, and in dismissing the plaintiff's suit.

The defendants also filed a petition for writ of *certiorari*, seeking to have reviewed the action of the court of civil appeals in refusing to pass on certain other assignments of error made by them in that court.

We have passed on these assignments of error, and have discussed them in a memorandum opinion, and they need not be discussed here. It suffices to say that none of them are sufficient to vitiate the verdict and judgment, and call for a reversal.

Now, coming to the plaintiff's further assignment of error that the court of civil appeals erred in holding that the verdict of the jury was excessive, we are of the opinion, after a careful reading of the evidence bearing upon the plaintiff's injuries, that the verdict was excessive. The evidence shows that the plaintiff was burned about the hands and forearms, and that there were some slight burns about his face and head. The physician who attended him testified that all of these burns were first and second decree burns. The physician described the first degree burns as being those where there was a simple redding of the skin, the burns not being sufficient to cause blisters, that the second degee burns were those which cause blisters and cause the skin to peel off, and third degree burns were those of sufficient severity and depth to cause the flesh of the burned member to slough. According to the testimony of the physician the worst burns the plaintiff had were on his hands and forearms, and he says that these were second degree burns. The evidence does show that the skin peeled off of the plaintiff's hands and forearms, and left some scars upon both his hands and

his forearms; but there is no evidence tending to show that he is permanently injured. There is no evidence tending to show that he incurred any expenses in the way of hospital bills or for medical treatment. While it is true that he was confined in the hospital twenty-two days, his hospital bill was paid by the railroad company. Furthermore, the proof fails to show that he lost anything in the way of earnings while he was injured. The evidence does show that his injuries were very painful for at least a few days, but that he has fully and permanently recovered; there remaining only some scars on his hands and forearms as a result of said burns.

We are of the opinion, that the sum of $2,500 would be ample compensation for the injuries sustained by the plaintiff. It results that the judgment of the court of civil appeals will be modified, in so far as it sustained the defendants' motion for a directed verdict and dismissed the plaintiff's suit but its action in holding that the verdict in plaintiff's favor is excessive will be affirmed. And a remittitur is ordered; and, unless the same is accepted by the plaintiff, the judgment will be reversed, and the case remanded for a new trial. If the remittitur is accepted, the judgment, less the amount of the remittitur, will be affirmed, with costs.