# MASHBURN v. THORNTON et al.—244 S. W. (2d) 173.

Middle Section.   Aug. 31, 1951.

Rehearing Denied Oct. 26, 1951.

Petition for Certiorari denied by Supreme Court, December 14, 1951.

R. H. Polk, of Nashville, for appellant.

Hofstetter & Hofstetter, of Nashville, for appellees.

FELTS, J.   This is a suit for damages for a false warranty of an automobile.  Complainant charged that defendant Thornton, doing business as Thornton Motor Company, sold him the car by falsely representing it to be a new car when in fact it was a secondhand or used car.  The Commercial Credit Corporation, holder of the note and conditional sales contract executed by complainant for the balance owing on the car, was also made a defendant to the bill.

Answers were filed and the cause was heard orally before the Chancellor according to the forms of chancery. The Chancellor found that defendant Thornton sold complainant the car, representing it to be a new 1949 Hudson sedan, when in fact it was not a new but was a used car. Accordingly, the Chancellor entered a decree for complainant against Thornton for damages in the sum of $400, the difference between the actual value of the car and its value had it been as represented.  He dismissed the bill as to the Commercial Credit Corporation.  Defendant Thornton appealed.

■ The Chancellor's findings are fully supported by the proof, and we concur in them. Thornton was a Hudson dealer in Nashville, operating as Thornton Motor Company. He sold complainant a 1949 Hudson sedan April 13, 1949. The price of the car was $2,900. Complainant paid $1,300 down ($600 cash and $700 by another car traded in) and executed an installment note and conditional sales contract for the balance, plus carrying charges, etc. The price of a new car of that type was $2,900. The invoice and the contract described the car as a ''new car,'' and Thornton told complainant it was a new car. In fact, however, it was not a new but a secondhand or used car.

Thornton had sold it to a customer and later taken it back. That customer was Wilson C. Tate, a resident of Davidson County. This car seems to have been first a Maroon color, and Thornton repainted it black and sold it to Tate March 17, 1949. On the same day he bought 1949 license plates for Tate, had the car registered in Tate's name, and delivered to Tate the registration certificate and the car with the license plates attached to it. Tate owned and used and drove this car for about half a month. He became dissatisfied with it and brought it back to Thornton March 31, 1949. Thornton took it back, repaid Tate's cash payment, gave him back the old car he had traded in as part payment, and paid off the note which he had given for the deferred part of the purchase price and which Thornton had transferred to the Commercial Credit Corporation.

On taking this car back Thornton proceeded to make it look like a new one. He removed and discarded the license plates which had just been issued in the name of Tate and were good until April 1, 1950. Tate had used the car nearly half a month and driven it about

1,200 miles. Thornton had the speedometer changed or turned back so as to show that the car had been driven two miles. He also had it repainted again—a two toned black and gray. These changes made, he put this car in his salesroom with his new cars and displayed it for sale as a new car.

As stated, he sold this car to complainant April 13, 1949. Instead of transferring to complainant the license on the car, as required by the statute, Code Sec. 1152.8, he had a new license for the car issued in complainant's name as if it were a new car. The invoice and the contract stated it was a "new car," and Thornton does not deny that he represented it to be a new car.

It is urged, however, that he told complainant the facts about the car, and this part of his testimony is referred to: "Q. 30 State what happened April 13th, 1949? A. He (complainant) came over to look at a new Hudson car. He had a job at Knoxville and he looked over a number of cars and seemed to like this black one. I told him it was not a factory paint job and the man was not satisfied and I got it back for sale."

Complainant testified: "* * * Mr. Thornton told us it was a new automobile, that he had painted it that way ("two toned gray") for one of his customers, and that he looked at it and decided not to buy it. I asked him specifically if it was new, and he said 'Yes,' and we checked the mileage and it showed two miles; he said the customer drove it around the block a couple of times and decided he did not like the paint job and cancelled the deal."

■ The proof clearly shows that Thornton did not disclose the facts to complainant. He did not tell complainant he had previously sold the car to Tate, Tate had used it two weeks and driven it about 1,200 miles, and

he had taken it back, repainted it, removed the license plates, and turned back the speedometer, so as to give it the appearance of a new car. It is a matter of common knowledge that there is a marked difference in value between a new car and a secondhand or used car. The proof shows that the market value of this used car was $2,500, while its value had it been new was $2,900, or a difference of $400, the amount of the damages allowed by the Chancellor.

█ █ Thornton was under a legal as well as a moral obligation to disclose the facts to complainant, not partially, but fully and truly. Baker v. Seahorn, 31 Tenn. 54, 56, 55 Am. Dec. 724. The duty upon a seller to tell the truth about his wares, or rather not to induce another to buy them by false representations, rests not on contract, but is imposed by moral and municipal law—the law of torts; and the remedy for a breach of that duty is an action of deceit for damages. Hogg v. Cardwell, 36 Tenn. 151, 157; Shwab v. Walters, 147 Tenn. 638, 644, 251 S. W. 42.

█ █ Thornton induced complainant to purchase this car by affirming as a fact that it was a new car. Such an affirmation of fact in a sale of chattels constitutes an express warranty. The common law regarded such a warranty as a tort obligation, and the remedy for a false warranty was an action in tort for deceit. After Stuart v. Wilkins (1778), 1 Dougl. 18, 99 Eng. Reprint 15, which held *assumpsit* would lie, the common law notion of a warranty as a tort obligation was enlarged to include also a contract obligation, i. e., as embracing either an affirmation of fact or a promise by the seller. 1 Street, Foundations of Legal Liability, 377-391; 1 Williston on Sales (3d Ed.), Secs. 194-203, 215.

■ This common law notion of an express warranty as embracing either a tort obligation (an affirmation of fact) or a contract obligation (a promise) has been given the force of a statute by the enactment of the Uniform Sales Act in most of the United States. By Section 12 of that Act, embraced in Williams' Code Section 7205, it is provided:

"Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only shall be construed as a warranty. (Ib., sec. 12)."

■ Under this statute a seller may be held liable for a false warranty, irrespective of whether he intended to warrant the goods or not. Where he makes an affirmation of fact regarding them which has a tendency to induce, and does induce, the buyer to purchase them, this constitutes an express warranty, and if it is false the seller is liable irrespective of any fraud or knowledge on his part that such affirmation was untrue. Hogg v. Cardwell, supra; Waterbury v. Russell, 67 Tenn. 159; 1 Williston on Sales (3d Ed.), Secs. 197-201, 215; DuPont De Nemours & Co. v. E. L. Bruce Co., 174 Tenn. 148, 156, 124 S. W. 2d 243.

The Uniform Sales Act gives the buyer a choice of remedies for a false warranty or a breach of warranty. Among other things he may return the goods and sue to rescind the sale, or he may keep them, pay for them, and maintain an action for damages. In such case the measure of his damages, in the absence of special cir-

cumstances showing his damages to be greater, is the difference between the actual value of the goods and the value they would have had if they had answered the warranty. Uniform Sales Act, Sec. 69, Williams' Code Sec. 7262.

■ This was the measure adopted by the Chancellor in this case. He allowed complainant damages in the sum of $400, the proof showing this to be the difference between the actual value of the car and the value it would have had if it had been as represented. There was no evidence of any special circumstances to take this case out of the ordinary rule. So we think the Chancellor's decree was correct.

The Chancellor's decree is affirmed. A decree will be entered here for complainant against defendant-appellant Thornton and the sureties on his appeal bond for $400, with interest from the date of the decree below, and for the costs of the appeal.

Howell and Hickerson, JJ., concur.

## On Petition to Rehear.

FELTS, J. Defendant Thornton has filed a petition to rehear complaining of our decision affirming the Chancellor's decree, which held that defendant had wilfully concealed from complainant the fact that said automobile was not a new, but a used car.

The petition points out no matter of law or fact overlooked, but is only a reargument of matters already thoroughly argued by counsel and fully considered and determined by us.

■ The office of a petition to rehear is to call the attention of the court to matters overlooked, not to those

things which counsel supposes were improperly decided after full consideration. Cox v. McCartney, Tenn. App., 236 S. W. (2d) 736, 739, and numerous cases there cited.

The petition is denied at petitioner's cost.

Howell and Hickerson, JJ., concur.