STANDARD STEVEDORING CO. INC., Appellee, v. SOL I. JAFFE, d/b/a United Steel Products Co., Appellant.—302 S. W. (2d) 829.

Western Section. June 21, 1956.

Petition for Certiorari denied by Supreme Court October 5, 1956.

Strauch & Jones, Memphis, for appellant.

Laughlin, Watson & Creson, Memphis, for appellee.

CARNEY, J.   The complainant below, Standard Stevedoring Co., Inc., of New Orleans, Louisiana, brought suit in the Chancery Court of Shelby County against the defendant, Sol I. Jaffe, d/b/a United Steel Products Co. of Memphis, Tennessee, to rescind the purchase and sale of a motor crane.

The Chancellor found in favor of the complainant, rescinded the contract and awarded judgment against the defendant, Sol I. Jaffe, in the amount of $10,485.80 which represented the purchase price of $10,000 plus $485.80 freight paid by complainant on the shipment of the crane from Memphis, Tennessee, to New Orleans, Louisiana. The defendant, Sol Jaffe, has appealed from the judgment below.

The complainant, as its name implies, is engaged principally in the business of unloading and loading ships. The defendant is engaged in the business of buying and selling new and used heavy equipment and machinery in Memphis, Tennessee.

The complainant purchased the crane as a result of an advertisement appearing in the January, 1953, issue of a trade journal or publication entitled "Rock and Dirt". Defendant's advertisement in said publication was as follows:

"Motor Crane: 15-20 ton P & H mechanical crane mounted on White 4x6 carrier. Complete rebuilt engine, clutches, cabs; unit absolutely perfect condition. 35' boom. A real buy. $10,000.00 FOB Memphis. United States Steel Products Co., 1535 Texas St., Memphis, Tenn. Phone 35-2855."

Complainant sent its representatives to Memphis to inspect the machine and on January 14, 1953, agreed to purchase it. Complainant made a deposit of $1,000 and ordered the crane shipped to New Orleans, Louisiana, where it was received by the complainant on January 22, 1953, and the remaining $9,000 purchase price paid through sight draft attached to the bill of lading drawn on a New Orleans bank.

Soon after the crane was received, the complainant in attempting to use it in loading or unloading a ship found it unsatisfactory because it did not have the necessary lifting capacity. As one witness testified, it appeared to be bouncing all over the place with a load substantially less than its supposed capacity of 15 to 20 tons. The complainant spent approximately $1,000 in repairs on the machine, a part of which at least were designed to add stability to the crane in its lifting operations.

The particular crane was manufactured by the Harneschfeger Corporation, of Wauwatosa, Wisconsin. P & H is the trade name or trade mark used by the Harneschfeger Corporation in the distribution of its products. At the time complainant purchased the crane there were no identification plates or other markings which showed the number, date of manufacture or rated capacity of said crane.

About a month after complainant had received the crane he received from the defendant a parts catalog for this particular crane used by the Harneschfeger Corporation. Complainant then communicated with the manufacturer and learned that the crane had been built about 1935 and was sold on October 16, 1935, as a shovel with a manufacturer's rated capacity of five tons. At the time the crane was originally sold it did not have a base or chassis but merely a sub-base which was merely a structural member on which the crane actually rotated. The purchaser mounted this shovel on a half-track tractor and kept the crane until 1938 after which its identity became lost.

The defendant purchased the crane in Indiana about 1950 and he completely overhauled it and mounted it on

rubber; that is, the White truck which made the crane more mobile. In addition, he installed outriggers which tend to give more stability and strength to the base of the crane and thereby increased to some extent the lifting capacity of the crane. Also he installed a 125 H.P. motor in the place of the original 55 H.P. motor.

The complainant contended and the preponderance of the proof shows that when a piece of machinery is advertised as having a certain capacity that the term is generally understood as the manufacturer's rated capacity.

The defendant contends that he did not advertise the crane as having a manufacturer's rated capacity of 15 to 20 tons and that the complainant was not justified in so construing said advertisement. The defendant's insistence is that he so completely rebuilt the machine from its original manufactured condition that the manufacturer's rated capacity of the original crane as a shovel would have no application to its present capacity after being completely rebuilt with new and heavier mounting, outriggers, etc.

The defendant introduced proof to show that before he sold the crane to the complainant it had satisfactorily lifted weights up to twenty-two tons and that he used the same method of rating the machine as manufacturers do; that he gave it a rated capacity of about 75% of what he thought the total lifting capacity of the crane was.

An official of the Harneschfeger Corporation testified as an expert that the maximum capacity of the crane as rebuilt and remodeled by the defendant with the White carrier base and with the outriggers was only 19,800 pounds or a trifle less than 10 tons.

From the Chancellor's finding of fact we quote as follows:

"In the opinion of the Court, the issues of the cause do not depend upon a finding that the crane did or did not have a 'factory rated capacity' of '15-20 ton'. It is further the opinion of the Court that the capacity of the machine may not be determined by the fact that upon one, several or more occasions the crane lifted as much as or more than twenty tons.

"The Court considers the issues of this cause must be determined upon whether the crane has built in it such strength, stability and endurance and other equally essential qualities and properties as will allow it to handle fifteen to twenty ton burdens in usual, ordinary and day-by-day operations, with the degree of regularity and safety as is usual and customary in cranes built to handle such weights and loads.

"It may be conceded that the White Trucks chassis, upon which the crane now is mounted, will sustain a crane of the capacity advertised and that the pull of the 125 horsepower motor with which the machine was originally equipped, will lift the advertised weight, but these features are merely part of the whole which must stand the test of capacity. Will, however, all of the component parts and members of the machine, including frame, plates, base, rollers, gears, bearings, mountings, pins, rivets, bolts, etc., stand the stress and strain of '15-20 ton' operation? The proof evidences that the component parts and members of the machine, and its structure and its fabrication, will not stand the stress and strain,

with an adequate safety factor, of the normal and ordinary operation of a crane of the capacity as advertised.''

■■ We concur in the above finding of the Chancellor and we also concur in the Chancellor's finding that there was an express warranty on the part of the defendant that the crane had a 15 to 20 ton capacity and that the crane which was sold had a capacity of substantially less tonnage and that therefore, the express warranty had been breached.

■■■ The defendant contended that since the complainant sent employees to inspect the machine that the complainant did not rely on any warranty or statement of the defendant but relied upon the examination of his employees. The preponderance of the proof is that a person cannot tell the lifting capacity of one of these machines simply by looking at it. Also we think the preponderance of the proof is that no attempt was made by the employees of complainant who inspected the machine to ascertain its maximum lifting capacity by actual tests or demonstrations. Hence, we affirm the holding of the Chancellor that the rule of caveat emptor does not apply in the case of the breach of an express warranty. Sullivan & Cole v. Bandy & Gray, 15 Tenn. App. 411.

We have not discussed the assignments of error of the defendant individually but have considered them together and as a result of our findings and holdings as hereinabove set out, assignments of error 1, 2, 3, 4 and 5 are respectfully overruled.

Assignment of error No. 6 is to the effect that His Honor, the Chancellor, erred in not holding that the complainant having accepted said machine and made alterations on the same was precluded from seeking to rescind the contract.

We think the case of Alexander Hamilton Institute v. Rogers, 19 Tenn. App. 150, 84 S. W. (2d) 107, is not applicable because in that case the purchaser accepted the books for a correspondence course, wrote a letter in which she expressed satisfaction with them, never sought to return the books and claimed a breach of express oral warranty in the fact of her written contract which expressly stated that there were no oral warranties.

Nor do we think the case of Nu-Way Ice Cream Machine Co. v. Pig'N Whistle, 16 Tenn. App. 581, 65 S. W. (2d) 575, 577, relied upon by defendant is controlling. In that case the purchaser bought certain ice cream machinery on the installment plan and used it for some five months in making ice cream before it ever made a written complaint as to breach of warranty. It did not tender the return of the machine. In that case the Court did make the following salient observation:

"If the defendant desired to rescind the contract because of the breach of warranty, or misrepresentations, it should have done so within a reasonable time after it knew that the warranty or guaranty had been breached."

The conduct of the complainant in this case seems to be entirely within said rule. As soon as it learned that the machine which it had purchased did not have the advertised capacity the complainant sought immediately

to rescind the contract and to return the machine and they did not use it any more.

■ Nor do we think the repairs of approximately $1000.00 made by the complainant on the machine, which the Chancellor did not allow the complainant to recover, operated to deprive complainant of the right to rescind. These repairs appear to have been made in good faith by the complainant in an effort to make the machine which they had purchased work satisfactorily. While the value of the machine may not have been enchanced by the $1000.00 worth of repairs, certainly it does not appear that the value was decreased or diminished by the addition of these repairs.

We concur in the finding of the Chancellor that the complainant acted within a reasonable time after the discovery of the breach of warranty and assignment of error No. 6 is respectfully overruled.

■ The Chancellor found, and we concur in his finding, that the defendant was guilty of no fraud or intentional wrongdoing in warranting the said machine to have a 15 to 20 ton capacity. The defendant is not an engineer. That fact does not relieve the defendant of liability.

Tennessee Code Annotated Section 47-1212, formerly 1932 Code Section 7205, is as follows:

"47-1212. 'Express warranty' defined.—Any affirmation of fact or any promise by the seller relating to the goods is an express warranty if the natural tendency of such affirmation or promise is to induce the buyer to purchase the goods, and if the buyer purchases the goods relying thereon. No affirmation

of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only shall be construed as a warranty.''

Complainants rely upon the case of Mashburn v. Thornton, 35 Tenn. App. 216, 244 S. W. (2d) 173, which announces the rule that where a seller of goods makes an affirmation of fact which has a tendency to induce and does induce buyer to purchase, there is an express warranty, and if it is false the seller is liable irrespective of any fraud or knowledge on his part that the affirmation was untrue and irrespective of whether he intended to warranty the goods or not.

Under the Uniform Sales Act a purchaser has an absolute right to rescind where there has been a breach of an express warranty. True v. J. B. Deeds & Son, 151 Tenn. 630, 271 S. W. 41.

It follows that the decree of the lower Court is respectfully affirmed and a decree will be entered in this Court in favor of the complainant against the defendant and his surety in the amount of $10,485.80 together with interest from November 14, 1955. The title to the crane will be vested in the defendant. The defendant and his surety will be taxed with the costs of this appeal and the costs in the lower Court.

Avery, P. J. (Western Section), and Bejach, J., concur.