ANNIE KNEELAND, Appellee, v. FLOYD L. BRUCE
and E. H. GODWIN, Appellants. —336 S. W. (2d) 319.

Western Section. February 26, 1960.

Certiorari Denied by Supreme Court June 6, 1960.

Campbell Yerger and W. H. Fisher, Memphis, for appellants.

F. C. Sewell and W. D. Stinson, Jr., Memphis, for appellee.

BEJACH, J. This cause involves an appeal in error by Floyd L. Bruce and E. H. Godwin from a jury verdict and decree rendered thereon in the Chancery Court of Shelby County, Tennessee, April 9, 1959, for $2,000 compensatory damages and $1,000 exemplary damages. For convenience, the parties will be styled, as in the lower court, complainant and defendants, or called by their respective names.

In her original bill filed March 5, 1958, Annie Kneeland alleges that prior to July 5, 1957, she was the owner, unemcumbered, of a one acre tract of land in Shelby County, Tennessee,—one acre in extent on Henrietta Avenue, known as Lot 44 of the Henrietta Bennett Unrecorded Subdivision, and that by reason of a fraudulent conspiracy between defendants Floyd L. Bruce and E. H. Godwin she lost title to said land to one Robert A. Armistead, Jr., who was an innocent purchaser for value of a

note secured by a trust deed on said property, which trust deed had been foreclosed.

Her bill alleges that shortly before July 5, 1957, she was approached by a Negro man, Nathan Taylor, who represented Floyd L. Bruce, and who told her that Bruce could build two duplexes on the vacant part of her land, which would pay for themselves; that later Bruce, himself, interviewed her and confirmed the representations of Taylor, assuring her that only the ground on which the two duplexes were to be built would be mortgaged and that that part of her land on which her home stood would not be mortgaged. The bill alleges that Bruce, with the aid of a Negro boy, measured off the two lots for the duplexes and assured her that her home would not be involved in the transaction. The bill alleges that on the following day, July 5, 1957, defendant Floyd L. Bruce brought to complainant several papers and told her that they would have to be signed by her in order to obtain the necessary building permits; that complainant asked defendant Bruce to leave the papers over night so that her daughter could read them to her, but that he insisted that he would have to have them early the next morning, and, consequently, that he could not leave them. He assured her, however, that if she would sign them, he would bring them back for her to read after he had obtained the permits. The bill alleges that relying on Bruce's assurance, and believing that she was signing only papers necessary for obtaining a building permit, she did sign the papers presented by Bruce, but that he never brought them back to her, although repeatedly requested so to do.

Among the papers signed were a first mortgage note and trust deed for $18,000, payable $135 per month, and a second mortgage note and trust deed for $1,000 payable at $15 per month. In addition, there was a document designated "Sales Contract" signed by Floyd L. Bruce, which recited that he agreed to furnish materials and build two duplexes on the south 140 feet of Lot 14, Henrietta Unrecorded Subdivision, which were to be constructed in accordance with standard building practices and city minimum construction requirements. The trust deeds encumbered all of complainant's property.

The bill alleges that complainant did not realize that she had signed any papers other than those required to obtain building permits, and that in response to her inquiry as to when a contract would be made and when they would go before a Notary, she was told by defendant Bruce that that would come later, and complainant alleges that she never made any acknowledgement before a Notary Public. It developed, however, that Bruce was a Notary Public and had certified complainant's acknowledgment to the trust deeds.

The bill alleges that defendant E. H. Godwin came to complainant's home in July 1957 and advised her that he and Bruce worked together, and that he was going to help Bruce finance the undertaking. It alleges further that he and defendant Bruce began building operations without consulting complainant, and that when asked about it, they advised her that everything was all right, and that all she had to do was trust them.

The bill alleges that Robert A. Armistead, Jr., purchased the property at foreclosure sale, December 19, 1957.

The bill alleges that by reason of the fraudulent conspiracy of defendants Floyd L. Bruce and E. H. Godwin, she has suffered irreparable damage, and that she is entitled to the aid of the Chancery Court to correct the gross fraud perpetrated against her.

The bill prays for process, for injunctive relief to require defendants Bruce and Godwin to perform their contract as promised and undo the gross fraud perpetrated, both in compensatory and punitive damages, that complainant recover of defendants Floyd L. Bruce and E. H. Godwin punitive damages in amount sufficient to deter and prevent them forever from committing a similar act in the future, and for general relief.

Originally, the Loan Investment Company, a corporation of which E. H. Godwin is president, was sued in this cause, but as to it, the suit was dismissed and no judgment or decree was rendered against it.

Separate answers were filed by defendants Floyd L. Bruce and E. H. Godwin, in which answers they deny any fraud or misrepresentations, and in which defendant Bruce claims to have properly performed his contract with complainant. Defendant Godwin claims merely to have been a purchaser of the notes executed by Annie Kneeland. Subsequently, both defendants made motions to withdraw their answers and file demurrers, which motions were supported by an affidavit of their solicitor, Mr. Campbell Yerger. The Court, however, denied said motions.

The cause was tried to a jury on November 10, 1958. The following issues of fact were submitted to the jury, which, together with the jury's answers to same, were as follows:

"Issues of Fact

"I

"Was the trust deed in question procured through fraud of Floyd L. Bruce?

"Answer 'Yes' or 'No': <u>Yes</u>

"II

"Did Floyd L. Bruce and E. H. Godwin enter into a conspiracy to defraud complainant of her property?

"Answer 'Yes' or 'No': <u>Yes</u>

"III

"If the answer to either I or II is 'Yes', what damages has the complainant suffered?

"Answer: $2,000.00 (Two thousand)

"IV

"If you find damages against either or both defendants should punitive damages be assessed, and if so, in what amount?

"Answer: Yes $1000.00 (One thousand dollars)".

The jury's verdict was approved by the Chancellor, and a decree, based thereon, was entered against both defendants for the sum of $3,000, consisting of $2,000 compensatory damages and $1,000 exemplary damages, together with the costs of the cause. Each of said defendants filed a motion for a new trial, which motions were overruled, and also motions for judgment non

obstante veredicto, which motions were also overruled; whereupon both defendants prayed and have perfected their appeals in error to this Court.

In this Court, appellant Floyd L. Bruce has filed fifteen assignments of error, all of which are adopted by appellant E. H. Godwin, and in addition he files ten other assignments of error. We deem it unnecessary to copy these voluminous assignments of error into this opinion and unnecessary to discuss same separately. In our opinion, only two questions are presented for our determination, viz., first, whether or not the Chancery Court had jurisdiction of the cause; and, second, whether there is sufficient evidence in the record to justify submission of the issues of fact to the jury. There is also involved a subsidiary question of whether exemplary damages should have been awarded in this cause.

 It is the contention of appellants that the case at bar involves a suit for unliquidated damages in tort, exclusive jurisdiction to try which is in the Circuit Court. Even if this contention were otherwise sound, which it is not, it would not be available to appellants in the instant case, because it was not presented initially by plea in abatement, demurrer, or motion to dismiss, as is required by Section 16-616, T. C. A. True it is, that defendants, after they had already filed answers, undertook to withdraw same and file demurrers. The Chancellor, however, disallowed their application so to do. It is assigned as error that the Court erred in refusing to allow defendants to withdraw their answers and file demurrers. The allowance or refusing of this application to amend by defendants was within the sound discretion of the Chancellor, and his ruling will not be reversed unless that discretion was abused. Plantt v. Plantt, 28 Tenn. App.

79, 186 S. W. (2d) 338; Payne v. Eureka-Security Fire & Marine Ins. Co., 175 Tenn. 134, 133 S. W. (2d) 456; Chattanooga Ice Delivery Co. v. George F. Burnett Co., Inc., 24 Tenn. App. 535, 147 S. W. (2d) 750; Section 20-1504, T. C. A.; Reagan v. McBroom, 164 Tenn. 476, 51 S. W. (2d) 995. Treating appellants' assignment of error as equivalent to a charge that the Chancellor abused his discretion in disallowing the application to withdraw the answers and file demurrers, we think it is still without merit. Having filed answers, the defendants had accepted the jurisdiction of the Chancery Court and the Chancellor cannot be said to have abused his discretion by retaining that jurisdiction when defendants undertook to change their minds. The proposition here involved is, in our opinion, closely analogous to that ruled on in Caccamisi v. Thurmond, 39 Tenn. App. 245, 282 S. W. (2d) 633, where the defendant undertook to amend his pleadings and file a plea of the statute of limitations, after a motion for directed verdict had been overruled. In that case, in affirming the ruling of the trial judge, this Court said:

"It is contended that the trial judge abused his discretion in refusing the application of defendant to be allowed to amend his pleas so as to plead the Statute of Limitations of one year. It is an entirely different proposition to say that the plea of the Statute of Limitations, if same had been filed on behalf of defendant, would have been good and should have been sustained, from saying that the trial judge erred in abusing his discretion in refusing to allow such plea to be filed, belated as was the application so to amend." Caccamisi v. Thurmond, 39 Tenn. App. 266-267, 282 S. W. (2d) 643.

Likewise, in the instant case, it is an entirely different proposition to say that defendants' demurrers might have been good if same had been seasonably filed, from saying that the Chancellor erred by abusing his discretion in refusing permission to withdraw said answers and file demurrers. In any event, the contention is without merit because, in our opinion, even if such demurrers questioning the jurisdiction of the Court had been seasonably filed, they should have been overruled. Chancery Courts in Tennessee have jurisdiction of actions for fraud and deceit. Gibson's Suits in Chancery, 5th Ed., Secs. 36 and 57; Shwab v. Walters, 147 Tenn. 638, 251 S. W. 42; Mashburn v. Thornton, 35 Tenn. App. 216, 221, 244 S. W. (2d) 173.

In Shwab v. Walters, 147 Tenn. 638, 640, 251 S. W. 42, Mr. Chief Justice Green, speaking for the Supreme Court of Tennessee, said:

"This is an action of fraud and deceit brought in the chancery court to recover damages for false statements alleged to have been made as to the financial condition of a corporation in which the complainants bought stock from the defendants. There was a decree for the complainants below, and the defendants have appealed to this court.

"A preliminary question of the jurisdiction of the chancery court in Tennessee to entertain such an action is made by the defendants. This objection to the jurisdiction must be overruled.

"Chapter 97 of the Acts of 1877 conferred upon the chancery court in this state jurisdiction of all civil cases triable in the circuit court, except suits

'for injuries to person, property or character, involving unliquidated damages.'

"To meet a construction of this statute made in Swift v. Warehouse Co., 128 Tenn. 82, 158 S. W. 480, by chapter 47 of the Acts of 1915, the Legislature further enlarged the jurisdiction of the chancery court as follows:

" 'That jurisdiction of all civil causes of action now triable in the circuit court, except for unliquidated damages for injuries to person or character and except for unliquidated damages for injuries to property not resulting from a breach of oral or written contract, is hereby conferred upon the chancery court, which shall have and exercise concurrent jurisdiction thereof along with the circuit court.'

"Under these broad provisions it is obvious that the chancery court does have jurisdiction of a suit such as the one before us. Actions for fraud and deceit, like this one, have been constantly heard in the chancery court in this state since the passage of chapter 97 of the Acts of 1877. If any doubt was thrown upon chancery jurisdiction of such cases by Swift v. Warehouse Co., supra, it was removed by chapter 47 of the Acts of 1915." Shwab v. Walters, 147 Tenn. 640-641, 251 S. W. 42-43.

It thus appears that the jurisdiction of the Chancery Court in the instant case was properly exercised, and that appellants' objection to that jurisdiction was without merit.

■ We next take up the question of whether there was evidence which warrants submission of the issues to the jury in this case. The defendants moved to withdraw

the issues from the jury and dismissed the case, consequently, the issue is presented as to whether there was any material evidence which warranted submission of the issues to the jury. It being a jury case, however, we are not concerned with the weight or preponderance of the evidence, and must accept the evidence in the light most favorable to the party successful in the lower court. Fairbanks, Morse & Co. v. Gambill, 142 Tenn. 633, 222 S. W. 5; Smith v. Tate, 143 Tenn. 268, 227 S. W. 1026; Cincinnati, N. O. & T. P. R. Co. v. Denton, 24 Tenn. App. 81, 140 S. W. (2d) 796; D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 508, 206 S. W. (2d) 897; Young v. Spencer, 44 Tenn. App. 83, 312, S. W. (2d) 479; Benson v. Fowler, 43 Tenn. App. 147, 306 S. W. (2d) 49; Callahan v. Town of Middleton, 41 Tenn. App. 21, 292 S. W. (2d) 501, 504; Luckey v. Gowan, 46 Tenn. App. 392, 330 S. W. (2d) 45.

■ There was evidence from which the jury could have found that defendant Floyd L. Bruce represented to complainant, an old Negro woman with little education and no income, that only the ground on which the two duplexes were to be built would be mortgaged, whereas the mortgage actually covers her entire property. There was also evidence from which the jury could have found that the defendant Floyd Bruce deliberately concealed from complainant the contents and nature of the papers which she was signing, and withheld from her the information that he, himself, was a Notary Public and had notarized the papers which she had executed. This was aggravated by the fact that defendant failed or refused to give to complainant copies of the papers which she had executed, although he was requested so to do. There was also evidence that the defendant E. H. Godwin told complainant that he and defendant Floyd L. Bruce were

working together, and ample evidence that he and said Bruce did work together in this particular transaction. There was evidence indicating that defendants delayed completion of the duplexes until after the first payments were due, knowing that complainant had no income with which to meet such payments. The circumstance that defendant Bruce made false representations and was guilty of other irregularities in obtaining building per-bits on the property here involved may well have been taken into consideration by the jury in determining as a fact that defendants Bruce and Godwin conspired to defraud complainant of her property. Without review-ing all of the evidence, which was considerable, it is sufficient to say that in our opinion same was ample to warrant findings by the jury both of conspiracy on the part of defendants Bruce and Godwin, and also of their purpose, which was accomplished, to defraud complain-ant, Annie Kneeland.

The case of Richardson v. McGee, 193 Tenn. 500, 246 S. W. (2d) 572, which held that an illiterate person was bound by the terms of a contract signed by him, is inap-plicable to the facts of the instant case, because in the Richardson case the holding of the Supreme Court was expressly limited to cases where fraud was absent, whereas in the instant case the whole gravamen of complainants' lawsuit is fraud.

On the subsidiary question of whether exem-plary or punitive damages were properly recoverable in the instant case, we think the matter is concluded by the recent decision of the Supreme Court in the case of Bryson v. Bramlett, (1958), 204 Tenn. 347, 321 S. W. (2d) 555, and by the decision of this Court in McDonald v. Stone, 45 Tenn. App. 172, 321 S. W. (2d) 845, in which

last-named case certiorari was denied by the Supreme Court on the same day that a rehearing was denied in Bryson v. Bramlett. The Chancery Courts of this State have ample jurisdiction to award exemplary or punitive damages in proper cases, and the case at bar was a proper one for the application of that jurisdiction.

██ Many of the assignments of error filed in the instant case deal with the refusal of the Chancellor to give in charge to the jury special requests presented by defendants. In our opinion, the general charge of the Chancellor was ample to cover these special requests, and we find no reversable error resulting from the refusal of any of them. Certainly, under the harmless error statute, Sec. 27-117, T. C. A., we cannot say that the error, if any, of refusing any or all of these special requests affected the result of the trial.

It results that all of the assignments of error filed by appellants Floyd L. Bruce and E. H. Godwin will be overruled and the decree of the lower court affirmed.

A decree may be entered in this Court in favor of complainant, Annie Kneeland, and against the defendants, Floyd L. Bruce and E. H. Godwin, for the sum of $3,000, together with interest thereon at the rate of 6% per annum from April 9, 1959, the date of the final decree in this cause, which date was also the date of overruling defendants' motions for new trial and for judgment non obstante veredicto.

The costs of this cause, including those of the lower court as well as those of this Court, will be adjudged against the appellants, Floyd L. Bruce and E. H. Godwin, and the sureties on their appeal bonds.

Avery, P. J. (Western Section), and Carney, J., concur.